UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

In re:

STEVEN PAUL HAGGERTY,

            Debtor.

_____/

Case No. 17-00033
Hon. Scott W. Dales
Chapter 13

MEMORANDUM OF DECISION AND ORDER

PRESENT:    HONORABLE SCOTT W. DALES
                    Chief United States Bankruptcy Judge

This Memorandum of Decision and Order resolves two related contested matters, namely (i) the Debtor's Objection to Claim of Bosco Credit II Trust Series 2010-1 (ECF No. 48, the "Objection") and (ii) the Debtor's Motion for Reconsideration of Claim 5 Filed by Bosco Credit II Trust Series 2010-1 (ECF No. 52, the "Motion").  The relief requested in both contested matters is closely related, and during a hearing held on January 3, 2019, the parties agreed that a decision on one necessarily resolves the other.  For the following reasons, the court will overrule the Objection, and deny the Motion.[1]

In a prior (and long-closed) chapter 7 proceeding, Case No. 08-06291-JRH, the court entered an order discharging Mr. Haggerty's debts, including a second mortgage debt now serviced by Franklin Credit Management Corporation for the ultimate creditor, Bosco Credit II Trust Series 2010-1 ("Bosco Credit").  The parties agree that although the entry of the chapter 7 discharge enjoined the collection of Bosco Credit's claim as a personal obligation of Mr. Haggerty, it did not affect the creditor's *in rem* rights against its collateral,

---

[1] The allowance or disallowance of the claim at issue in this opinion also has a bearing on the chapter 13 trustee's motion to dismiss (ECF No. 46), which the court adjourned (with the agreement of the parties) to February 27, 2019, at 9:00 AM in Lansing, Michigan.

the real estate commonly known as 11195 W. Herbison Road, Eagle, Michigan (the "Property"). *See Johnson v. Home State Bank*, 501 U.S. 78, 84 (1991); Motion at ¶ 11.

After Bosco Credit took steps to exercise its foreclosure rights against the Property, Mr. Haggerty filed a chapter 13 bankruptcy petition. He promptly proposed his chapter 13 plan (the "Plan") through which he offered "direct payment of his first mortgage loan to Chase Home Finance, payment of priority tax debt, [while] seeking to strip both the second and third liens from his real property and providing a 100% dividend to his remaining general unsecured creditors. . ." Motion at ¶ 9. Although the Plan proposed to pay the Chase Home Finance claim, that claim, like Bosco Credit's claim, was also discharged in the earlier case.

Bosco Credit filed a secured claim in the amount of $154,619.57, and opposed confirmation of the Plan, initially challenging Mr. Haggerty's valuation of the Property and the terms for post-confirmation lien preservation. The parties commendably worked to resolve their differences, which they seemingly did by entering into a settlement. The court adopted their settlement terms by entering the Order Determining the Extent of the Second Lien on Property Commonly Known as 11195 W. Herbison on April 13, 2017 (ECF No. 29, the "April 2017 Order"). Unfortunately, the settlement lacked the nuance required to address the somewhat complicated situation involving the discharged, underwater, junior mortgage claim of Bosco Credit.

For example, with respect to Bosco Credit's claim, the April 2017 Order provided that the "Creditor's claim shall be allowed as a non-priority general unsecured claim and shall be paid as such in accordance with the Debtor's Chapter 13 Plan." April 2017 Order at ¶ 2. This provision, evidently entered without negotiation based on form language included in orders that approve lien strips in our District, contemplates not only allowance

of the claim, but also payment, even though the claim was admittedly discharged in the 2008 case. During the January 3, 2019 hearing, counsel for Bosco Credit contended that his firm, with respect to any client subject to "strip off" of a junior lien, always insists on treatment as an unsecured creditor, as the firm evidently did here by including the proposed language in the stipulation. Indeed, the Plan as confirmed (without objection) provides for full payment of creditors with allowed unsecured claims. The Motion also recites that chapter 13 trustee Barbara P. Foley (the "Trustee") recommended confirmation of Mr. Haggerty's 100% dividend Plan.

Mathematically, with plan payments of $350.00 per month, even for the entire sixty-month applicable commitment period the Plan would yield only $21,000.00 -- far short of the $154,619.57 due to Bosco Credit, let alone other claimants including Debtor's counsel (with a "no look" fee of at least $3,200.00), tax creditors and other unsecured creditors (with claims estimated at $9,551.00).[2]

So, under the confirmed Plan and the April 2017 Order, the Trustee must pay a 100% dividend to all creditors with allowed claims, including Bosco Credit's $154,619.57 claim, within the sixty-month applicable commitment period. *See* 11 U.S.C. § 1326(c). The Trustee evidently now reads the operative documents in this way because, starting on July 2, 2018, she made three monthly payments to Bosco Credit, in the aggregate amount of $1,279.46, on account of its unsecured claim as of November 23, 2018. She also filed a motion to dismiss, now contending that the Plan is "no longer feasible" based on the total amount of allowed claims, *i.e.*, taking Bosco Credit's claim into account. *See* Trustee's Motion to Dismiss Chapter 13 case (ECF No. 46). To reiterate, however, the Plan was

---

[2] Under the Plan, Mr. Haggerty is making direct payments to his car lender and the holder of the first lien on the Property, although (as noted above) the first mortgage claim, like Bosco Credit's claim, was also discharged in the 2008 chapter 7 case.

never feasible as a full-payment plan if Bosco Credit is permitted to participate in the distribution, as the April 2017 Order requires.

During the November 8, 2018 hearing to consider the Claim Objection, the court suggested that § 502(j) might bear on the parties' dispute.[3] This provision permits the court to reconsider the allowance or disallowance of claims for cause and based on the equities of the case. *See* 11 U.S.C. § 502(j). After briefing the issue, the parties agree that courts generally analyze arguments under § 502(j) using the rubric of Rule 60(b), made applicable by Rule 9024, at least where the court allows (or disallows) the claim in a final order. *See* Motion at ¶¶ 47-48 (citing *In re Bennett*, 590 B.R. 156 (Bankr. E.D. Mich. 2018) and *In re Packer*, 558 B.R. 842, 845 (Bankr. W.D. Mich. 2016)). As Judge Shefferly noted in *Bennett*, the express cross-reference to § 502(j) in Rule 9024 relaxing the deadlines under Rule 60(c) for reconsidering uncontested claims allowance decisions makes this a natural inference. And, consistent with a court's discretion under Rule 60, bankruptcy courts retain "wide discretion to determine what constitutes cause for reconsideration of claims under § 502(j)." *Bennett*, 590 B.R. at 160 (quoting *Ruskin v. DaimlerChrysler Servs. N. Am., L.L.C. (In re Adkins)*, 425 F.3d 296 (6th Cir. 2005)).

To support reconsideration, Mr. Haggerty relies principally on the last three subsections of Rule 60(b), arguing that the April 2017 Order is void, satisfied, or otherwise inequitable to apply prospectively. *See generally* Fed. R. Civ. P. 60(b)(4) - (b)(6). He also suggests, with a nod to Rule 60(b)(1), that in crafting the stipulation upon which the court premised the April 2017 Order, the parties labored under a mutual mistake about whether the Trustee would pay Bosco Credit's claim, given the prior chapter 7 discharge. This

---

[3] Unless the context requires otherwise, any statutory reference, as in "§ 502(j)," indicates a section of title 11, United States Code. Similarly, the court will refer to any of the Federal Rules of Civil Procedure as "Rule __," and any of the Federal Rules of Bankruptcy Procedure as "Rule __", relying on the respective numbering conventions and context to differentiate each set of rules.

mistake, he implies, infects the April 2017 Order that adopted the settlement, making the order susceptible to modification under Rule 60(b)(1).

The court rejects the argument that the April 2017 Order is somehow "void," a term connoting a jurisdictional defect, violation of due process, or an express statutory or public policy basis for voiding a judgment.  As to jurisdiction and due process, the court unquestionably had jurisdiction over the subject matter and the parties when it entered the April 2017 Order, 28 U.S.C. § 1334(a), and there was ample notice and an opportunity to be heard before entry of the order because the parties themselves prepared the stipulation that prompted the court to enter it.  The court perceives no constitutional or jurisdictional defects warranting relief under Rule 60(b)(4).

Although invoking the express judgment-voiding language of § 524(a)(1) has some initial appeal under Rule 60(b)(4), for a variety of reasons the court does not regard the allowance or payment of Bosco Credit's claim as imposing personal liability on Mr. Haggerty, especially because his chapter 13 case is completely voluntary (and so is each plan payment).[4]  The argument based on § 524 would be stronger, certainly, if the stipulation had purported to waive the discharge or revive Mr. Haggerty's personal liability to the creditor, but there is nothing of the sort in the language of the agreement or the April 2017 Order.  Rather, both may be fairly read as Mr. Haggerty's voluntary agreement to make payments to the Trustee for the benefit of Bosco Credit as a means of addressing the creditor's plan objection premised on its non-recourse or *in rem* claim under *Johnson v. Home State Bank*, just as Mr. Haggerty has done in this very Plan with the discharged first

---

[4] By voluntarily converting or dismissing this case under § 1307(a) or (b), Mr. Haggerty could immediately free himself from any obligation to pay the Trustee under the Plan and the April 2017 Order.  Chapter 13 debtors routinely relieve themselves of their obligations to make plan payments by pulling the levers of § 1307 because conversion or dismissal generally renders the plan a "dead letter." *Harris v. Viegelahn*, 135 S.Ct.1829, 1833 (2015) (conversion); *In re Gonzales*, 578 B.R. 627, 631 (Bankr. W.D. Mich. 2017) (dismissal).

mortgage claim of Chase Home Mortgage. The Bankruptcy Code expressly permits similar payments, post-discharge, provided the debtor is not agreeing to incur personal, enforceable liability (except in accordance with the provisions governing pre-discharge reaffirmation agreements). *See, e.g.,* 11 U.S.C. § 524(c) (regarding reaffirmation agreements), 524(f) (permitting voluntary payment of discharged debt), and 524(j) (authorizing home lenders to accept payments from debtors in lieu of pursuing *in rem* relief). The April 2017 Order does not impose personal liability on Mr. Haggerty in violation of his discharge and is not void under Rule 60(b)(4).

Mr. Haggerty also contends that Rule 60(b)(5) provides grounds for relief because the April 2017 Order is "satisfied" by the prior discharge. *See* Motion at ¶ 53. The court is not persuaded. Perhaps Bosco Credit's *in personam* claim against Mr. Haggerty might be regarded as "satisfied" by the discharge (though most creditors would not use that word), but, as just noted, the court regards the payment term within the April 2017 Order not as imposing personal liability in violation of § 524, but as setting the terms for treating an *in rem* claim. The obligation to pay Bosco Credit under the April 2017 Order (and the Plan) is in no way satisfied by the discharge that predated it by several years.

Regarding Rule 60(b)(6)'s "catchall" provision, the cases in our circuit and elsewhere make clear that relief under Rule 60(b)(6) is available only in "exceptional" or "extraordinary" circumstances, not addressed in other parts of Rule 60. *McCurry v. Adventist Health System/Sunbelt, Inc.*, 298 F.3d 586, 596 (6th Cir. 2002). Echoing the Sixth Circuit's observation in that decision, which the court finds applicable here, "the grounds for relief identified in this case, involving straightforward claims of attorney error and strategic miscalculation, do not satisfy this rigorous standard." *Id.* Mr. Haggerty has identified nothing extraordinary in his Motion, only the regrettably-too-common reliance

by counsel on "boilerplate" added to agreements without sufficient consideration of the efficacy or suitability of the formulaic language. *See* Motion at ¶ 29. Permitting the unwitting or mistaken reliance on "boilerplate" to justify relief under Rule 60 would transform federal judgments from final to flimsy.

Furthermore, with respect to the suggestion that a mutual mistake regarding the impact of the discharge on this proceeding warrants relief under Rule 60(b)(1), several impediments remain. First, it is not entirely clear that Mr. Haggerty may rely on Rule 60(b) more than a year after entry of the April 2017 Order. Indeed, Mr. Haggerty's counsel conceded in her moving papers that it is too late to assert mistake under Rule 60(b).[5] Nor, for that matter, did Mr. Haggerty offer any evidence in connection with the Motion to suggest that Bosco Credit's counsel, Mr. Shefferly, was mistaken about whether his client would be paid under the chapter 13 Plan (as the order states). Courts generally insist on a showing of *mutual* mistake before upsetting contractual bargains, including settlements. *See Sweeney v. Walter E. Heller & Co. (In re American Plastics Corp.),* 102 B.R. 609, 611 (Bankr. W.D. Mich. 1989) (Nims, J.).

The court need not decide whether the April 2017 Order was "entered without a contest," making the argument under Rule 60(b)(1) timely, or whether the parties were both mistaken about the payment term within the April 2017 Order, or even whether a mistake in interpreting legal procedure suffices under the rule, because even assuming answers to each question in Mr. Haggerty's favor, the court would nevertheless conclude, under § 502(j), that the equities of the case do not warrant relief.

---

[5] *See* Motion at ¶ 50, n.6. Perhaps Rule 9024 offers some relief from the timing restriction if (contrary to the oral argument of Bosco Credit's counsel) the April 2017 Order were deemed "entered without a contest." *See* Fed. R. Bankr. 9024 (relaxing timing requirements under Rule 60(c) for orders allowing or disallowing a claim "entered without a contest").

In effect, through his Motion and Objection, Mr. Haggerty is asking the court to "blue pencil" the parties' settlement of the confirmation objection, excising the portion that he now regrets while leaving in place other portions of the settlement that he favors (such as the withdrawal of the confirmation objection). This result is far from equitable. Without revoking the confirmation order, which the court is not permitted to do more than 180 days after confirmation and without any hint of fraud,[6] the net effect of granting Mr. Haggerty's Motion is to bind Bosco Credit to a plan, without payment, and without giving the creditor the chance to argue that payment is required on its non-recourse claim. Although it is not clear whether the court, if writing on a clean slate prior to confirmation, would have disallowed Bosco Credit's claim to the extent the claim is "unenforceable against the debtor" as opposed to "property of the debtor,"[7] or whether the court would have required payments on the non-recourse claim, the timing of the Motion and the equities persuade the court to refrain from making that decision.

Finally, as the court and the parties discussed briefly during the January 3, 2019 hearing, it is at least conceivable that Mr. Haggerty can address the effect of today's adverse ruling either by dismissing and re-filing his case or proposing a plan amendment complying with § 1329. The court, of course, has no preference, but encourages him to consider his options promptly to minimize additional expense to Bosco Credit, the Trustee, and others because of the unfortunate circumstances described in this opinion.

---

[6] *See* 11 U.S.C. § 1330(a) (grounds for revoking confirmation order).

[7] *See, e.g., In re Rosa*, 521 B.R. 337 (Bankr. N.D. Calif. 2014) (discussing authorities requiring payment of discharged, stripped-off claims, but concluding that holder of such a claim is not entitled to any payment under so-called "chapter 20" plan); *In re Sweitzer*, 476 B.R. 468 (Bankr. D. Md. 2012) (same). As a statutory matter, § 502(b)(1) distinguishes between claims against the debtor and claims against property of the debtor. Bosco Credit clearly has a claim against the property of the debtor under *Johnson v. Home State Bank*, but it is less clear that it has an enforceable claim against Mr. Haggerty -- a "right to payment" as § 101(5)(A) defines the term -- after entry of his chapter 7 discharge, absent a timely reaffirmation agreement. Moreover, the estate may assert a debtor's pre-petition defenses as a basis for disallowing a claim. *See* 11 U.S.C. § 558; *Travelers Cas. and Sur. Co. of America v. Pacific Gas and Elec. Co.*, 549 U.S. 443, 449 (2007).

NOW, THEREFORE, IT IS HEREBY ORDERED that the Motion is DENIED, the Objection is OVERRULED, and Bosco Credit may retain payments it received pursuant to the Plan.

IT IS FURTHER ORDERED that the Clerk shall serve a copy of this Memorandum of Opinion and Order pursuant to Fed. R. Bankr. P. 9022 and LBR 5005-4 upon Kristen L. Krol, Esq., John Kapitan, Esq., and Barbara P. Foley, Esq.

END OF ORDER

**IT IS SO ORDERED.**

**Dated January 10, 2019**



Scott W. Dales
United States Bankruptcy Judge